**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: | ) |
| | ) |
| ROBERT PADULA | ) Case No. 11-12985-BFK |
| DEBORAH PADULA, | ) Chapter 13 |
| | ) |
| Debtors. | ) |

**MEMORANDUM OPINION AND**
**ORDER GRANTING DEBTOR'S MOTION**
**TO AUTHORIZE PROSECUTION OF**
**STATE COURT PERSONAL INJURY ACTION**

In August 2012, the Debtor, Ms. Padula, was involved in an automobile accident. This occurred after she filed a Chapter 13 bankruptcy petition in this Court, after the Court confirmed her Chapter 13 plan, and while her bankruptcy case was still pending. She filed a lawsuit in State court, but failed to amend her bankruptcy Schedules in this Court until more than two years after the accident and after the Defendants filed a Motion for Summary Judgment in the State court. The Debtor then amended her Schedules and filed a Motion to Authorize Prosecution of a State court personal injury action. Docket Nos. 94, 95.[1] One of the Defendants in the State court action, VPSI, Inc. ("VPSI"), filed an Objection to the Debtor's Motion, asserting that the proposed amendments to the Debtor's Schedules were untimely and that the Debtor should be judicially estopped from amending her Schedules. Docket No. 98. The Debtor filed a Reply Memorandum. Docket No. 99. VPSI filed a Sur-Reply and the Debtor filed a Response to VPSI's Sur-Reply. Docket Nos. 104, 107. The Court heard the arguments of the parties on March 12, 2015, at which time the Court continued the matter for testimony from the Debtor on

---

[1] The Motion was styled as a "Motion to Authorize Debtor, Deborah Padula to Prosecute State Court Personal Injury Action Nunc Pro Tunc as of February 6, 2014." Docket No. 95. At the hearing on March 12, 2015, the Debtor advised the Court through her counsel that she was no longer seeking *nunc pro tunc* relief.

whether she inadvertently or intentionally failed to amend her Schedules to list the cause of action. The Court heard the testimony of the Debtor on April 2, 2015. For the reasons stated below, the Debtor's Motion will be granted.

## Findings of Fact

The facts are not genuinely in dispute, with the exception of whether or not the Debtor acted in good faith, which is disputed. The Court makes the following findings of fact:

1. The Debtors filed their bankruptcy case under Chapter 13 on April 22, 2011. Docket No. 1.

2. On December 15, 2011, the Court confirmed the Debtors' Chapter 13 Plan. Docket No. 59.

3. On August 12, 2012, the Debtor was involved in an auto accident with Terence Gregory Maguire, an employee of VPSI.[2]

4. The Debtor met with a personal injury attorney, Mr. Williams, of the law firm of Allen & Allen, in the Fall of 2012. She discussed her bankruptcy case with Mr. Williams. He advised her that she did not need to file anything in her bankruptcy case because the claim was exempt under Virginia law, and because it occurred after the filing of the Chapter 13 case.

5. The Debtor did not engage the Allen & Allen firm. Rather, she met with James Parrish, and engaged him as her personal injury attorney. She advised Mr. Parrish that she had discussed the bankruptcy with Mr. Williams, and that Mr. Williams advised her that she did not need to file anything in the bankruptcy case. Mr. Parrish advised her that she did not need to file anything in her bankruptcy case in order to proceed with the personal injury case in State court.

---

[2] For purposes hereof, the Court will refer to Ms. Padula only as the Debtor, because she was the one involved in the accident.

2

6. The Debtor met with her bankruptcy attorney in mid-2013. She relayed her conversation with Mr. Williams to her bankruptcy counsel. Her bankruptcy counsel agreed with Mr. Williams' advice, to the effect that the claim was exempt. The Debtor's bankruptcy counsel did not advise her that she needed to amend her Schedules at that time.

7. On February 6, 2014, Ms. Padula filed a Complaint in State court against Mr. Maguire and VPSI for damages arising out of the accident.

8. On January 15, 2015, Mr. Maguire and VPSI filed a Motion for Summary Judgment with the State court. The Debtor's personal injury attorney, Mr. Parrish, forwarded this Motion to her.

9. On February 25, 2015, the Debtor filed Amended Schedules B and C in this Court, in which she disclosed the claim against Mr. Maguire and VPSI in Schedule B, and exempted the claim in her Amended Schedule C. Docket No. 94.[3]

10. The day after she filed her Amended Schedules, on February 26, 2015, the Debtor filed her Motion to Authorize the Prosecution of her State court personal injury action. Docket No. 95.

11. More than 30 days have elapsed since the Debtor's amendments to Schedules B and C were filed, and no objections to her Amended Schedule C have been filed.

12. The Debtor acknowledged in her testimony that she brought the lawsuit on her own behalf; however, she also testified that if she was required to share any recovery with the creditors, she would do so.

---

[3] Virginia is an opt-out State. VA. CODE ANN. § 34-3.1. Virginia provides an unlimited exemption for personal injury actions. VA. CODE ANN. § 34-28.1.

**Conclusions of Law**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for this district entered August 15, 1984. This is a core proceeding under 28 U.S.C. §§ 157(a)(2)(A) (matters concerning the administration of the estate) and (B) (exemptions from property of the estate).

    I.    **The Debtor Always had Standing to Bring the Personal Injury Claim.**

The Debtor's personal injury claim is a post-petition, post-confirmation claim. As such, it is property of the estate under Section 1306(a) of the Bankruptcy Code, which includes "all property of the kind specified in [Section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under Chapter 7, 11 or 12 of [Title 11], whichever occurs first[.]" 11 U.S.C. § 1306(a)(1); *Carroll v. Logan*, 735 F.3d 147, 150 (4th Cir. 2013) (holding that post-confirmation inheritance was property of the estate under Section 1306(a), despite Section 541(a)(5)'s 180-day limitation for post-petition inheritances).

Property of the estate can be exempted by the Debtor, at which point, it ceases to be property of the estate. In this case, the Debtor amended her Schedules B and C on February 25, 2015, listing the claim as exempt under Va. Code § 34-28.1. Once thirty days had passed from that date, i.e., by March 28, 2015, the Debtor's personal injury claim was exempted and no longer constituted property of the estate. FED. R. BANKR. P. 4003(b) (requiring objections to exemptions "within 30 days after the meeting of creditors held under § 341(a) is concluded *or within 30 days after any amendment to the list or supplemental schedules is filed*, whichever is later") (emphasis added); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (untimely

objection to claim of exemption disallowed, even where the debtor had no colorable basis for the claim of exemption).[4]

VPSI argues that the Debtor's Motion should be denied because the Debtor lacked standing to file the lawsuit, at the time that the suit was filed. Docket No. 98 at 3–4 (VPSI Response); Docket No. 104 at 3–6 (VPSI Reply) ("Debtor is not authorized to sue for her own benefit.") The Fourth Circuit has held that Chapter 13 Debtors have standing to maintain non-bankruptcy causes of action. *Wilson v. Dollar General Corp.*, 717 F.3d 337, 343–44 (4th Cir. 2013). The *Wilson* case involved a pre-petition cause of action under the Americans with Disabilities Act (ADA). The Fourth Circuit made clear the distinction between a Chapter 13 debtor's standing to bring non-bankruptcy causes of action and a Chapter 7 debtor's standing to bring the same kinds of claims. The Court stated:

> [I]n the Chapter 7 bankruptcy context—which requires liquidation and distribution of assets by the trustee—we have recognized, "[i]f a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." We have applied this principle to causes of action that are part of the estate when brought by creditors and by Chapter 7 debtors alike.
>
> But the breadth of our precedent has been limited. We have only considered the abilities of Chapter 7 debtors and trustees to maintain non-bankruptcy causes of action that are part of the estate. We have not yet considered to what extent the Chapter 13 debtor—who, unlike the Chapter 7 debtor, retains possession of the bankruptcy estate—may also possess standing to assert a cause of action, either exclusive of, or concurrent with, the authority vested in the trustee.
> . . . .
>
> We find the authority of our sister circuits persuasive and conclude that, unlike a Chapter 7 debtor, a Chapter 13 debtor possesses standing—concurrent with that of the trustee—to maintain a non-bankruptcy cause of action on behalf

---

[4] In 2008, Congress added subsection (2) to Rule 4003(b), allowing the trustee to object to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the exemption. FED. R. BANKR. P. 4003(b)(2). The Chapter 13 Trustee in this case has not asserted that the Debtor has fraudulently claimed the personal injury cause of action to be exempt.

    of the estate. The nature of Chapter 13 bankruptcy when compared to Chapter 7 supports this conclusion.

*Wilson*, 717 F.3d at 342–43 (citations omitted).

  VPSI relies on the case of *Vanderheyden v. Peninsula Airport Commission*, for the proposition that a debtor "may pursue a claim belonging to the bankruptcy estate only if the trustee abandons it pursuant to 11 U.S.C. § 554(a) or if the bankruptcy court exempts it under the applicable exemption scheme." Civil Action No. 4:12cv46, 2013 WL 30065, at *9 (E.D. Va. Jan. 2, 2013). The *Vanderheyden* case is distinguishable, though, because: (a) it involved a pre-petition cause of action (and, therefore, should have been listed in the Debtor's initial Schedules when she filed her bankruptcy case); and (b) it involved a Chapter 7 case. Post-*Wilson*, there is a meaningful distinction to be made between Chapter 7 cases and Chapter 13 cases in the context of standing to bring non-bankruptcy claims.[5]

  VPSI further argues that, under *Wilson*, the Debtor had standing to bring her non-bankruptcy cause of action only "on behalf of the estate" at the time that she filed her lawsuit. This argument, in the Court's view, overstates the importance of the phrase "to maintain a non-bankruptcy cause of action on behalf of the estate" from *Wilson*. 717 F.3d at 343. VPSI argues that the Debtor testified at the April 2nd hearing that she understood that she was bringing the lawsuit in her own name and for her own benefit (though she also testified that she would share the proceeds of the lawsuit with her creditors if she had to). The subjective understanding of the Debtor (who is not an attorney), though, cannot be determinative of the legal question of

---

[5] Just one month prior to *Wilson* being issued by the Fourth Circuit, the District Court made the same distinction between Chapter 7 cases and Chapter 13 cases in *Royal v. R & L Carriers Shared Services, LLC*, Civil No. 3:12–cv–00714, 2013 WL 1736658, at *3 (E.D. Va. Apr. 22, 2013) ("Although the U.S. Court of Appeals for the Fourth Circuit has not taken a position on the issue, every federal appeals court to rule on it—not to mention a large number of bankruptcy courts—has held that Chapter 13 debtors have standing to sue on their own, even though their pre-petition causes of action belong to the bankruptcy estate.") The *Royal* case specifically noted that the holding in *Vanderheyden* would not apply in the Chapter 13 context. *Id.* at *3 n.4.

standing. *See Smith v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008) ("the four circuit courts to consider this issue have all concluded that Chapter 13 debtors have standing to bring claims *in their own name* on behalf of the bankruptcy estate") (emphasis added); *In re Ortiz*, 477 B.R. 714, 723 n.8 (E.D. Wis. 2012) ("The *Bembenek* plaintiffs did not state in their complaint that they were pursuing their claims on behalf of their estates, but as Chapter 13 debtors, they would have been"); *Evinger v. Emery Winslow Scale Co.*, Cause No. 2:12–cv–25–WTL–WGH, 2012 WL 3095575, at *4 (S.D. Ind. July 30, 2012) ("whether it is because his interest in the lawsuit is vested in [the debtor], or because he has possession of estate property during the pendency of his bankruptcy, [the debtor] has standing") (citation omitted). The Fourth Circuit in *Wilson* itself framed the issue as whether "Chapter 13 debtors have standing to bring causes of action *in their own name* on behalf of the estate." *Wilson*, 717 F.3d at 343 (emphasis added). There is no suggestion in *Wilson* that the Plaintiff brought his action as "Lamont Wilson, as Chapter 13 Debtor on behalf of the bankruptcy estate of *In re Wilson*." In the end, VPSI's position that the Debtor lacked standing at the time that she filed her lawsuit because she failed to list the cause of action in her Schedules is inconsistent with the central holding of *Wilson*. The District Court for this district made this point in the *Royal* case, where it held:

> [I]n light of Bankruptcy Rule 6009's language that a debtor in possession may appear "before any tribunal" "with or without court approval," Royal's lack of disclosure on his bankruptcy schedule does not appear to undermine his standing in the instant suit.

*Royal*, 2013 WL 1736658 at *5 (quoting FED. R. BANKR. P. 6009). This case is indistinguishable from *Royal* in all relevant respects.

Under *Wilson*, the Debtor in this case *always* had standing to file her lawsuit.

## II. The Debtor Has the Right to Amend Her Schedules at Any Time Until the Case is Closed.

VPSI argues that the amendments to the Debtor's Schedules come too late, having been made more than two years after the accident. Bankruptcy Rule 1009(a), though, provides a general right to amend any list, schedule or statement by the debtor "as a matter of course at any time before the case is closed." FED. R. BANKR. P. 1009(a). There is no time limit on the ability to amend the Debtor's Schedules in this situation.[6]

In 2014, the Supreme Court held that the bankruptcy courts have no authority to surcharge debtors' exemptions on equitable grounds, in the face of clear statutory authority to the contrary. *Law v. Siegel*, 134 S. Ct. 1188, 1195 (2014). The Court held that Bankruptcy Code Section 105(a), which enables the bankruptcy court to issue any order or process in aid of its jurisdiction, did not permit the bankruptcy court to disregard the plain language of the more specific statutes (11 U.S.C. § 522(c) and (k)) protecting exempt property from the claims of creditors and from the payment of administrative expenses. *Siegel*, 134 S. Ct. at 1194 ("It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code'") (quoting 2 Collier on Bankruptcy ¶ 105.01[2] at 105–06 (16th ed. 2013)). After *Law v. Siegel*, a number of courts have held that bankruptcy courts do

---

[6] In addition to Bankruptcy Rule 1009(a), Bankruptcy Rule 1007(h) provides:

> If, as provided by §541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 14 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual debt adjustment case.

FED. R. BANKR. P. 1007(h). The Rule is limited by its terms to the kinds of property described in Bankruptcy Code Section 541(a)(5). It does not apply to post-petition property covered by Section 1306, that is, to the kind of property at issue in *Carroll v. Logan* and in this case. *In re Kemp*, Adversary No. 11–5002, 2011 WL 3664497, at *3 (W.D. La. Aug. 19, 2011) (Rule 1007(h) "does not, however, cover the property brought into the estate under section 1306, including post-petition causes of action. Nevertheless, courts have uniformly held that a Chapter 13 debtor is obligated to disclose post-petition causes of action.")

not have the authority to deny an amended claim of exemptions on bad faith grounds. *In re Gray (Gray v. Warfield)*, 523 B.R. 170, 175 (B.A.P. 9th Cir. 2014) ("[t]hus, *Law v. Siegel* mandates the conclusion that the bankruptcy court is without federal authority to disallow the Amended Exemption or to deny leave to amend exemptions based on Debtors' bad faith"); *In re Smith*, No. 13–11237–ta7, 2014 WL 7358808, at 5 n.5 (Bankr. D. N.M. Dec. 24, 2014) ("In the past courts have conditioned a debtor's right to amend her schedules on good faith. The 'bad faith' exception recognized in these cases has been overruled by *Law v. Siegel*) (citations omitted); *In re Arellano*, 517 B.R. 228, 231 (Bankr. S.D. Cal. 2014) (the court's "ability to disallow the Debtor's claimed exemptions in the omitted assets—whether indirectly by denying leave to amend to include a new exemption or directly by disallowing the exemption itself—when based solely on its equitable powers and the existence of bad-faith or prejudice is clearly irreconcilable with *Law v. Siegel*"); *In re Scotchel*, No. 12–09, 2014 WL 4327947, at *4 (Bankr. N.D. W.Va. Aug. 28, 2014) ("the emerging view of courts interpreting *Law* have held that courts no longer have the discretion to deny an amended exemption based upon equitable considerations such as a debtor's bad faith or prejudice to creditors.") The Court agrees with these cases and holds that, under *Law v. Siegel*, Bankruptcy Rule 1009(a)'s explicit language permitting debtors to amend their Schedules "as a matter of course at any time before the case is closed" precludes an inquiry into the Debtor's good faith in amending her Schedules B and C.

      This is not to say that there are never any consequences for a Chapter 13 debtor, should she fail to disclose a post-petition cause of action in her case. Depending on the circumstances of the particular case, the Court can dismiss her case on bad faith grounds for a failure to disclose a cause of action. In this case, the Chapter 13 Trustee is not pressing for any sanctions, and appears

to be satisfied with a reporting requirement imposed upon the Debtor to disclose the results of the litigation. The Court will decline to impose any sanctions *sua sponte*.

### III. The Court Rejects the Judicial Estoppel Bar.

VPSI asserts that the Debtor should be judicially estopped from amending her Schedules, more than two years after the accident.[7] Judicial estoppel protects the integrity of the judicial process, and prevents the parties from "'playing fast and loose' with the courts." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir.1982) (quoting *United Va. Bank/Seaboard Nat. v. B.F. Saul Real Estate Inv. Trust*, 641 F.2d 185, 190 (4th Cir. 1981)); *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996). Judicial estoppel requires proof of four elements: (1) the party must be seeking to adopt an inconsistent position from that taken in prior litigation; (2) the position must be one of fact, not of law; (3) the prior inconsistent position must have been accepted by the court; and (4) the party must have "'intentionally misled the court to gain an unfair advantage.'" *W. Insulation, LP v. Moore*, 316 F. App'x. 291, 299 (4th Cir. 2009) (quoting *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007)); *In re Rivera*, Adversary Proceeding No. 13–01280, 2014 WL 287517, at *4 (Bankr. E.D. Va. Jan. 27, 2014). The Court finds that the third element of judicial estoppel is lacking in this case—the Court has not "accepted" the Debtor's position. The Court further finds that, to the extent that good faith may still be a relevant factor, the Debtor did not act with the intent to deceive her creditors.

---

[7] In its initial Opposition to the Debtor's Motion, VPSI argued that "Debtor concealed her potential claim for more than two and a half years," citing cases such as *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), and *Moses v. Howard Univ. Hospital*, 606 F.3d 789 (D.C. Cir. 2010), which are judicial estoppel cases. Docket No. 98 at 3. In its Sur-Reply, VPSI again argued judicial estoppel, although it couched its argument in terms of whether the Court might wish to judicially estop the Debtor, *sua sponte.* Docket No. 104 at 6–13. VPSI then spent the next 7 pages of its 13 page brief arguing that the Debtor was in fact judicially estopped. *Id.* The Court finds that VPSI has put judicial estoppel squarely at issue in its responses to the Debtor's Motion.

The timing on the third element is important. The Debtor's cause of action arose after confirmation of the Debtor's Chapter 13 Plan on December 15, 2011. The Court could not have "accepted" the lack of disclosure of the claim in the Debtor's Schedules at that time because the cause of action did not exist until August 12, 2012. The Debtor still has not been discharged, and will not be discharged until she completes her plan payments. 11 U.S.C. § 1328 ("as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan"). The distinction is laid out in the *Vanderhayden* and *Royal* cases, which involved Chapter 7 and Chapter 13 cases, respectively. *Compare Vanderheyden*, 2013 WL 30065 at *11 ("[t]he bankruptcy court accepted this representation when it discharged Vanderheyden's debts, dismissed the bankruptcy trustee and closed Vanderheyden's bankruptcy case"); *with Royal*, 2013 WL 1736658 at *6 ("the bankruptcy court did not 'accept' the plaintiff's position that he had no legal claims against the defendant, for the bankruptcy court has yet to grant the plaintiff relief or close his bankruptcy action"). *See also Collucci v. Tyson Farms, Inc.*, Civil Action No. 3:14–cv–397–JAG, 2014 WL 6879927, at *2 (E.D. Va. Dec. 4, 2014). There was no bankruptcy event between the accident of August 12, 2012, and the amendment to the Debtor's Schedules on February 25, 2015, from which the Court could conclude that it accepted the absence of the cause of action in the Debtor's Schedules in any way.

Finally, to the extent that good faith may still be a legitimate inquiry in the post-*Law v. Siegel* environment, the pre-*Law v. Siegel* cases of *Vanderheyden* and *Royal* would require the Court to make a finding as to the Debtor's good faith where the Debtor has delayed in listing the cause of action. The Court heard the testimony of the Debtor on April 2, 2015, and had the opportunity to observe her demeanor. The Court accepts her testimony as credible and forthright,

11

and concludes that she simply did not understand that she needed to amend her Schedules until she was advised to do so. In fact, she disclosed the bankruptcy filing to two personal injury attorneys, and they advised her that she did not need to file anything in the bankruptcy case. She disclosed the personal injury case to her bankruptcy attorney in mid-2013. Her bankruptcy counsel concurred with the personal injury attorneys' advice and advised her that she did not need to amend her Schedules at that time. This testimony was unrebutted by any evidence of bad faith from VPSI. Further, the courts have held that where a claim is exempt, the debtor lacks a motive to conceal the existence of the claim from her creditors. *Payne v. Wyeth Pharm., Inc.*, 606 F. Supp. 2d 613, 616 (E.D. Va. 2008) ("[t]hus, in deciding whether Plaintiff intentionally misled the Court by failing to amend his bankruptcy schedules, the Court examines Virginia's bankruptcy exemption for personal injury compensation to determine whether Plaintiff had a motive for concealment"); *Calafiore v. Werner Enters., Inc.*, 418 F. Supp. 2d 795, 799 (D. Md. 2006). In *Payne*, the Court held: "The fourth factor—whether the litigant intentionally misled the court to gain unfair advantage—is the *determinative* factor in the application of judicial estoppel to a particular case." *Payne*, 606 F. Supp. 2d at 616 (emphasis added). In this case, there is no dispute that the cause of action is exempt under Va. Code § 34-28.1. The Debtor, therefore, lacked a motive to conceal the asset from her creditors. The Court concludes that the Debtor did not intentionally conceal the claim from her creditors. The Court is satisfied with the Debtor's good faith.

For these reasons, the Court finds that it is inappropriate to apply judicial estoppel to bar the Debtor from amending her Schedules to list the claim on her Amended Schedule B, and to exempt it on her Amended Schedule C.

**Conclusion**

For the foregoing reasons, it is hereby **ORDERED:**

1. The Debtor's Motion to Authorize Prosecution of a State court personal injury action (Docket No. 95) is granted.

2. The Debtor shall promptly report the results of the litigation, or any settlement, to the Chapter 13 Trustee.

3. The Clerk shall mail copies of this Order, or provide electronic notice of its entry, to the parties below.

Date: Apr 27 2015    /s/ Brian F. Kenney
     Brian F. Kenney
Alexandria, Virginia    United States Bankruptcy Judge

Entered on Docket: April 28, 2015

Copies to:

Robert Padula
Deborah Padula
109 Stratford Place
Stafford, VA 22556
*Chapter 13 Debtors*

Craig L. Sarner, Esquire
Adam D. Michel, Esquire
1233 20th Street, NW, Suite 800
Washington, DC 20036
*Counsel for VPSI, Inc.*

Martin C. Conway, Esquire
The Martin Conway Law Firm, PC
12934 Harbor Drive
Suite 108
Woodbridge, VA 22192
*Counsel for Chapter 13 Debtors*

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
*Chapter 13 Trustee*

John T. Donelan, Esquire
Law Office of John T. Donelan
125 S. Royal Street
Alexandria, VA 22314
*Counsel for Chapter 13 Debtor Deborah Padula*